The case for argument is Michael R. Glenn v. Michael R. Glenn, Jr. Good morning, Your Honors. May it please the Court, my name is Brian Sullivan. I'm the plaintiff and the appellant in this appeal. This appeal relates to a two-week, $250,000 loan that I made to the appellees Michael and Michelle Glenn in 2007. That loan was used in their property development business but was never repaid. The loan was eventually discharged into Glenn's respective bankruptcy cases over my objection to discharge. The district court later affirmed the bankruptcy court's ruling and now I've appealed to this court. I'll continue to argue here that my loan should be declared non-dischargeable. Consequently, I'm asking this court to reverse the district court's ruling. My first argument is that the loan should be declared non-dischargeable because it was obtained by the fraud of Karen Chung. Karen Chung was acting as Michael Glenn's lawyer. How would you deal with this case? Suppose I wanted to sell my house and I hire a real estate agent. And the real estate agent, the prospective buyer, is very concerned about termites. So he asks the real estate agent, has this house been inspected for termites? And the real estate agent says yes. The real estate agent is lying. It hasn't been inspected for termites. I don't know. I didn't know there were termites in it. But it turns out there are termites. Now, is it your view that I am liable for this misrepresentation by the real estate agent because he's my agent? And you're the seller of the home? Yes. In that case, the real estate agent is working on your behalf, trying to sell the house, so you would be liable for that misrepresentation? That is absurd. Because when someone hires a real estate agent, he doesn't know what the real estate agent is going to say to a prospective buyer. How can he be liable? But the problem is, the buyer is going to be depending on the real estate's representation. Sure. And what the buyer should do is say to the real estate agent, I want to see the report of the inspection. Of course. You could have said, you could have called up the bank and said, look, this is very critical, whether you're in fact making a loan, committed to a loan. So will you please, you know, tell me, have you made that loan? Why didn't you do that? I didn't do that because I had a long-standing business relationship with Ms. Chung. With Chung and not Sullivan, though, right? You had not dealt with Sullivan before, or not Sullivan, I'm sorry, Glenn. You hadn't dealt with Glenn before. I had not dealt with Glenn before, no. But you knew that Chung had other clients besides the Glenns. I did. You knew that she wasn't in partnership with the Glenns. No. But I relied on Karen Chung's representation. I did not check to see if there was in fact an approved line. But I did do this. I did ask her employee, Adrian Lopez, to call up the bank and verify that the loan was in fact approved. And he did that, or pretended to do that. Why didn't you do it yourself? Why didn't you call the bank? Why do you trust an employee of someone else? I don't understand. It doesn't take a lot to pick up the phone and call the bank and say, have you committed to this loan? I was a close friend with Karen Chung, and we had done business together for a few years. And I trusted her and she and her employee as well. And after Adrian Lopez called the bank and evidently pretended to verify that the loan was approved, I went back to Karen Chung and asked her to verify that herself. And that she said she did. Well, your trust was misplaced. Absolutely. Yes. And why would Glenn know more than you did about what was going on at the bank? Because if there was a LaSalle line of credit being processed on behalf of him and his company, there would be a flurry of activity going on on his end. I mean, he would be talking to somebody at the bank. He would be providing financial statements, which he would have to personally certify. But he had arranged with Chung to find that loan for him, right? Right. And I've argued that he can't have it both ways. He can't say, well, I didn't know there was no loan because Karen Chung was handling everything. Well, if that's what he believed, then, well, she was his agent. But you're saying the same thing, right? I mean, Glenn trusted Chung and you trusted Chung. Why is your position superior to Glenn's? Glenn had to know that there was no loan being processed. And the reason for that is because no one ever applied for it. That's a separate argument. That argues that he committed fraud. I didn't think that was your central argument. I thought, do you think you have to prove fraud in order to recover here? Fraud by whom? By Glenn. That Glenn knew there was no loan commitment. No, I believe it's sufficient that I've proven fraud by Karen Chung. Right. But I've also argued as well that Michael Glenn also committed fraud here. His company was circling the drain in 2007. There is no way he could have believed. Well, otherwise, why would he take a swing loan at 104% interest? Obviously, he was in big trouble. Right. I didn't know that. I wasn't taking a credit risk with him. It would seem to me anytime you demand 104% annual interest, you know that's a high-risk loan. It is, but it was only for two weeks. It was only supposed to be a two-week loan. So then that two-week period, you'd get $10,000, and that bridge loan would be paid off, right? That's right. And it was just almost coincidentally, maybe not, when he actually got a large, I don't know what it was, closing settlement for a large amount that was similar, actually more than your loan. It could have paid it off in two days if they wanted to, I think. He could have, but he needed... He might have, instead of paying another $5,000, if he paid it off in two days or whatever, the bridge loan would have been done, and you'd have got your five grand and your money if it all worked out. The only issue here is about dischargeability and bankruptcy, isn't it? I mean, Chung, she's opened up and said, you're right, I'm wrong, and she's stuck with the debt. It's not dischargeable in bankruptcy. It's not dischargeable in bankruptcy as to Karen Chung. I'm arguing that... Yes, it's about whether or not his is. That's right, and I'm arguing that she was his agent. And you say that you would rather have the fraud attached to the debt as opposed to the person. I think the fraud does attach to the debt. Okay, well, that's the question then, isn't it? It is. Right, because the judge believed Glenn, thought he was credible, said he didn't know. He trusted Chung as well. Lopez goes out, comes back, yeah, it's all proved. We all look at it and say, well, a million-dollar line of credit, that's pretty big. Well, you think he should have known then? Absolutely. All right, well, that's the problem, and the judge said he believed that he didn't know. And so his debt's dischargeable and Chung's is not. His debt and Chung's debt are both non-dischargeable. Well, you think so. That's right. It worked out the other way, though, the way the judge ruled. That's correct. Okay. Okay, well, thank you, Mr. Sullivan. I'll reserve the remainder of the time. Right. Mr. Foster? If it pleases the Court, Chester Foster on behalf of Michael and Michelle Glenn, the Chapter 7 debtors in the bankruptcy case below and the appellees in this case. Your Honors have correctly focused on the right issues, obviously. Let me address a couple of them. Number one, with regard to the bankruptcy court's finding that the court found that Mr. Glenn did not perpetrate any fraud. The record is full of evidence that supports that finding, and as the Court is aware, that finding cannot be overturned unless it is clearly erroneous. And I would submit that any reasonable review of the record would establish that it's not clearly erroneous, and, quite frankly, a finding to the contrary, in my opinion, would have been clearly erroneous. Another one of the issues that one of your Honors has raised is the question of whether or not Mr. Glenn relied upon Karen Chung, and as your Honor points out, you're correct. He had the opportunity. He could have paid the money off in a very short period of time, but he did not do so because this was intended as a bridge loan. He had planned his finances around getting this loan coming in in a very short period of time, and so, to your point, your Honor, he did not pay it off immediately because he knew in his mind in two weeks there was going to be another loan coming in. With regard to Mr. Sullivan's interpretation of the bankruptcy code, he takes the position that Karen Chung's fraud, in and of itself, without being able to attribute it to the debtors in any respect, under the interpretation of Section 523A2A of the bankruptcy code, debt is enough. As your Honor has pointed out, he's attaching the fraud to the debt, not the individual. That's inconsistent with all of the case law, which basically says that, except in the instance where the fraud is perpetrated by a third party that can be imputed to the debtors, that the fraud of a third party is not non-dischargeable unless the debtor perpetrated the fraud or it's imputed to them through the basis of agency or partnership law. Every case that we've found, going back to Neal v. Clark, going back to 1877, every case in which the fraud of a third party is attributed to a debtor only arises out of the circumstance where there was an agency or partnership relationship. Mr. Sullivan's interpretation of 523A2A, where he reads the literal interpretation, is contradicted by the Supreme Court's holding in the case of Field v. Manns, in which the court basically said that the application of what the court described as this negative pregnant analysis not only doesn't apply to a circumstance concerning reasonable reliance, which is what was involved in the issue before the court at that point, but it also is equally applicable in terms of the intent. The Supreme Court, in its language in that decision, clearly rejects Mr. Sullivan's argument that you look at the statute and look at... Wasn't Chung the Glenn's agent? No, he was not, Your Honor. She was not, Your Honor. Wasn't there a written agreement between Glenn and Chung? There was, Your Honor. And what happened to that agreement? It's not in the record, right? It's in the record, Judge, but there was a question as to whether or not the actual final form of the agreement was executed. But in the agreement itself, the agreement was drafted by Mr. Sullivan, and the agreement itself had a provision that described the relationship between Mr. Glenn and his companies on the one hand and Karen Chung on the other as an independent contractor and disclaimed any liability for vicarious liability. So Chung was Sullivan's client in drafting that agreement? Sullivan, yes. Sullivan was an attorney who did legal work for Mrs. Chung. And he was the one who drafted that language in the original version of the document that was subsequently incorporated by Chung into all of her contracts. With regard to the agency issue, Judge, the bankruptcy court found that Chung was not an agent, and in doing so, the bankruptcy court looked to the controlling Illinois law, which is a Supreme Court case of Lawler v. North American Corporation, in which the Illinois Supreme Court said that the determining factor to determine whether or not one is an agent or a non-agent is to look to whether or not the principal has the right to control the activities of the alleged agent. And that holding was reaffirmed by this court in the case of In re chem tool that I've cited to the court, in which the court also reiterated that the principal consideration in determining an agency relationship is the right to control. It is undisputed in this case, the undisputed testimony was that Mr. Glenn and neither Mr. Glenn nor Mrs. Glenn or any of the Glenn parties ever had the right to control or nor did they ever attempt to control any of Karen Chung's activities. Mr. Sullivan takes the position with regard to the agency issue that the control issue only is relevant for determining whether or not there is an employee-servant relationship. An employee-servant relationship is one form of agency in which the principal controls not just the general right to direct, but every activity, the day-to-day physical conduct. The law is clear, though, in the total absence of the right to control, no agency relationship exists. And in the absence of an agency relationship, you cannot impute the misconduct of the third party, in this case, Chung, to Mr. Glenn. Clearly there was no agency relationship, which is what the bankruptcy court found. Another one of Mr. Sullivan's argument was that if there was no agency relationship, there was an apparent agency relationship and that he was entitled to rely on that. The problem with that is that doesn't conform with Illinois law. Under Illinois law, the existence of an apparent agency relationship springs from the conduct of the alleged principal, in this case, Mr. Glenn. The record establishes Mr. Glenn never did or said anything that would create that relationship. Another problem that he has with that argument is under Illinois law, it is incumbent upon the party seeking to rely upon the apparent agency relationship to verify both the existence and extent of the apparent agency relationship. In this case, that would have been as simple as Mr. Glenn simply turning to Mr. Sullivan, simply turning to Mr. Glenn and asking him, is she speaking for you as your agent when you're making these representations? Did not do that. He never asked Mr. Glenn one word about the LaSalle loan and Mr. Glenn never said anything about the LaSalle loan. Another problem he's got is in order to establish an apparent agency, you need to establish reliance. And as Mr. Sullivan addressed the court a little while ago, it's clear he relied upon his good friend Karen Chung, not upon any relationship between the two. He testified that the reason he made this loan is he was doing a favor for a friend of a friend. He testified he was very good friends with Karen Chung. He testified that before he actually made this loan to Mr. Glenn, he had loaned Ms. Chung $30,000. After he made this loan, after it did not close when Karen Chung told him it would, he loaned her another $30,000. And 30 days later, after the loan didn't close and at a time when Mr. Sullivan knew that the LaSalle line had never been approved, despite the fact that Karen Chung had told him he did, he loaned her another $35,000. It's clear that there was a very close personal relationship, a close personal friendship between Mr. Sullivan and Ms. Chung. And that's the reason he extended this loan to the Glenns. It wasn't because he was relying on any agency relationship or any apparent agency relationship. For all those reasons, Your Honors, I believe that the bankruptcy court ruled correctly. The district court properly affirmed it, and I ask Your Honors to affirm the district court's ruling. Okay, thank you, Mr. Judge. Thank you, Judge. Mr. Sullivan, you have a little bit of time. As a follow-up to your questions, I just want to remind the court that in the bankruptcy trial, pretrial, we had stipulated to the fact that I did justifiably rely on Karen Chung's representations about the existence of the LaSalle loan when I made my loan to the Glenns. That was also something that was decided in the Chung adversary a couple of years before. So there's no disagreement with the parties as to whether or not I justifiably relied on her statements and was defrauded by her. I've got a little bit of time left on the issue of apparent agency. The day before I made the loan, we all met at Nomadic Consulting's offices. Now, I, as a lender, wanted to know two things. First, how my money was going to be used, how the loan was going to be used. That question was answered by Mr. Glenn. The second question was how I was going to be repaid. I'm sorry I'm out of time. No, go ahead. You finish your thought. The second question was how I was going to be repaid. The only people that made representations about how I was going to be repaid on this loan were Adrian Lopez, Karen Chung's employee, and Karen Chung. Mr. Glenn is proud of the fact that he made no representations at all about how he was going to repay this loan. Under those circumstances, he knew that I was going to rely on Karen Chung's representations about the LaSalle loan. He said nothing. He didn't say she wasn't authorized to speak on my behalf. He didn't say, hey, you know, maybe there really isn't a LaSalle line of credit because my business is doing horribly and nobody from the banks called and talked to me about a loan, and I haven't sent any financials to them at all. I'm saying that under those circumstances, I was justified in believing that she was his agent. And this wasn't a one-off deal. They had this business relationship for three years, three or four years, and she was actively involved in these negotiations. She was the one that convinced me, according to the bankruptcy court's decision, she was the one that convinced me to make this loan. And she even bragged about having got this loan for the glands in her affidavit, which was one of the exhibits that was entered into evidence at trial. Okay, well, thank you, Mr. Sullivan and Mr. Foster.